on Case No. 2434, Bergnes v. Zayas. Good morning. Please tell me if you can hear me because sometimes I speak too softly because I have hearing aids on. Your Honors, this case basically is a, I'm not going to call it a test, but it's a effort to overcome this court's decision in Berges, which I unfortunately lost. The district court said that there was not, that the numbers, the complaint is full of comparisons in terms of salary, skill, education, difficulty, and it also has anecdotal evidence of being, of animus on the part of some people in the  So what I'm saying here is given, because this is a motion to dismiss where there has to be a fax which suggests an inference of discrimination. The animus that you refer to is not animus of the decision makers, is it? It's animus of people in the system but not the decision makers. Yes. So how can that animus give you any plus with respect to the argument of  I don't want to focus on the animus, Judge, because we have here an entire group, unlike in Berges. In the Berges case, there was a difficulty because the statistics said 50% of the first level are black and Hispanic, 20% of the next level are black and The court said, absent other information about how many from each group applied and what their qualifications were in the complaint, that there wasn't enough to even draw at a motion to dismiss stage an inference of discrimination. Here, in this complaint, we have an entire, everybody who's a court interpreter either speaks, is foreign born, speaks or associates with people who are foreign born. Every single one of them. They compare themselves to two groups, particularly court reporters, who only in the state court system, not in this system, only in the New York state court system, not any other New York state court system, do they make less. And they assert that most court reporters are not non-Anglo speaking people, and are not people, they assert that. We don't have the exact statistics, but we assert that with this group, it's 100% people who either speak a foreign language or associate with people who speak a foreign language. They make, they have, and we set forth in detail, the skills that they have to have, the number who pass the tests that are involved, the numbers who, the And those are very different between interpreters and reporters though, the qualifications, the certifications. Right, so we're How do you compare them? We're asserting that the qualifications, that the requirements to become an interpreter are more onerous than to become a court reporter. And we go through statistics about how many interpreters pass the examination that's required. I guess my point isn't so much that they're onerous, they're just different. They use different jobs that involve different skill sets. They're different. Well, they're different jobs that involve different skill sets, but their skill set, we're asserting in the complaint, are more, this is a motion to dismiss stage, they are more onerous, more difficult, and And therefore they get more, they should get equal money or more money? I mean, how do you, so school teachers are underpaid. People could make the argument that what they do is crucially important and perhaps more onerous than what a baseball player does or what somebody else, what a lawyer does, what a judge does, for God's sakes. We don't pay people commensurate with how hard their job is or what their qualifications are. We pay them based on lots of other things, right? And the question here is why, and is there an inference of, as opposed to school teachers in New York City, right? They get paid less than people in the suburbs. You can't say that all school teachers are people of other national origins or associate regularly with people of other national origins. You can't say that. They're black, white, right? They're male, female. They're all different mix, right? So you could not say for a school teacher that there's a suspect classification that they all belong to. Every single one of the interpreters belongs to a class that's a suspect classification. So right away we have, it's different. The job largely overlaps with a skill that is more commonly found among people from different countries or different nationalities. I'm sorry, I didn't hear the question. Well, the reason that there's a higher, that most or all interpreters are of a different nationality is because that's the skill set that involves, right? It's overlapped. It's the skill set, it's the job that's involved. You have to translate for people who speak other languages, who are generally not people of, who are native English speakers, right? But you need to show an inference of discrimination. Because the court reporters are largely white, Anglo-speaking. The court interpreters are 100% people of other national origins or associate with people of other national origins. And so that's right away showing that that's an assertion of a difference that we believe makes a difference, at least at the motion to dismiss stage. But just based on the numbers, are there any cases that hold that just based on the numbers you can have an inference of discrimination? Yes. Even the Burgess case says that you could do that, this court's decision, says that you can do that if you have statistics and you have assertions in your complaint. Remember, again, motion to dismiss, just plausible inference of discriminatory intent. We didn't have a trial. We weren't dismissed on summary judgment. This is a motion to dismiss stage where we are asserting, and it's a long complaint with a million footnotes, statistics, numbers, even showing that in every other court system, including right here, interpreters make more than court stenographers. I see that my time is up. Can we talk about standing just for a minute? Go ahead. Can we talk about the standing of the organization? Your Honor, I'm not going to. I believe that we did not assert that New York Communities for Change itself was harmed, only its members were harmed. So you're going to grab that? I concede that that's. Okay, great. Thanks. You've reserved a few minutes for rebuttal. May it please the Court. Daniel Magee from the Office of the New York State Attorney General on behalf of appellees. Given that counsel just conceded the standing argument, I will focus on the merits argument. On the court interpreter plaintiff's claim, the district court correctly concluded that plaintiffs' statistical allegations comparing the pay of court interpreters and court reporters do not raise a plausible inference of discriminatory intent for two reasons. The first, the complaint fails to allege that court interpreters and court reporters perform are similarly situated in all material respects. And second, that regardless, the statistical allegations comparing the two are vague and conclusory under Burgess. The numbers are pretty stark, aren't they? The differences between the state system and the federal system and the differences between court reporters and interpreters are pretty stark. The brief, your friend's brief, makes a pretty compelling argument for the legislature, doesn't it? On the pay, just in terms of the salary difference, your honor? Just the numbers, just the stark numbers, my goodness. I read those numbers and I look at the chart that he has for the federal system and the state system, and the chart that compares reporters to interpreters, and those numbers are pretty stark. I mean, it's pretty clear that in the state system, in your state system, interpreters are underpaid compared to the way they're paid in the federal court and compared to the way similar workers are paid in the state court system, right? You agree with that, don't you? I agree that he alleges a large pay difference between federal court interpreters and state court interpreters. I will give you that. However, no, you know, this court or no court has ever held that pay differences by themselves give rise to an inference of discriminatory intent even at the motion to dismiss stage. And in regards to the pay of court interpreters and court reporters, even if there is a difference there, and obviously he alleges there's a difference there, that alone too is not enough to give rise to an inference of discriminatory intent because there's no allegation that they are similarly situated in all material respects. My friend here conceded that court interpreters and court reporters perform different jobs that require different skills. What explains the differences? There's a number of, you know, non-discriminatory reasons for different pay amongst employees in a court system or any employer. So as he concedes the jobs... Specifically between the federal and state interpreters. Federal and state, I don't, there's nothing alleged in the complaint for why there is a difference, but obviously things like union negotiations, the court interpreters and court reporters in state court are a part of a union. I believe court interpreters in federal court are part of a union and they bargain with their employers, the federal system, the state system. Obviously this is not alleged in the complaint and, you know, I don't have any specific insight into anything like that, but those are types of things that might explain why one employer for the federal system, which covers all the states in the country, would have a different level of pay than the court interpreters just in the state of New York, which is one of the 50 states. So given the fact that you don't have a good answer for this at this point, and you shouldn't, I wouldn't expect you to, why shouldn't we allow this to proceed to discovery? Why shouldn't we let him at least explore the reasons for the difference in pay between one group that clearly is composed of people of color and minorities and another group that is pretty much not? Well, just focusing on the difference in the state system, for the federal system the difference in pay, I don't think that could be enough in any case. I don't think this court has ever said, you know, the pay difference between two different employers. But it illustrates the difference that he's talking about between interpreters and court reporters. It just adds to the just stark numbers. As I say, I look at those numbers and I say, oh, my goodness, this is a huge difference in the way these folks are paid, and they're all minorities. And so why not let it go to discovery? Why shouldn't we at least let it go past the motion to dismiss stage and let him get some discovery and let's get to the bottom of it? Because it's just not enough to say I am paid, you know, a group of people are paid less than another group. And I will challenge his contention that he alleges that all court interpreters are either of a different national origin or work with people of a different national origin. He alleges, and one of the plaintiffs interprets for American Sign Language, for deaf individuals. There's no allegation in the complaint how many of those interpreters there are. And there's no allegation in the complaint that deaf individuals are of a particular national origin. So it's simply not true that he alleges that all court interpreters even work with people of another national origin. And he doesn't allege that the court interpreters themselves are all of a different national origin. Three of the court interpreter plaintiffs in the complaint, there's no allegation of what their national origin even is. So it's just not the case that you have all court interpreters are of a distinct national origin and all court reporters are American because he doesn't even allege that. The allegation is that court reporters are mostly not American. That could be 50.1% of court reporters. We simply don't know based on the allegations in the complaint. And what Burgess said is, sure, in some cases maybe statistics could be enough in a pattern or practice case like this one. But Burgess didn't recognize it in that case. And the statistics here are even weaker than in Burgess. In Burgess you have the different levels of the supervisors in that case with the specific percentages of what national origins there are at each level. Here we don't even have, we have no percentages. We have mostly, majority, things like that. We simply don't know. And those types of allegations aren't enough even at the motion to dismiss stage. And I take your Honor's point, why not just let this go to discovery. Discovery is burdensome. Litigation is burdensome, especially involving the state court system. And while, yes, this court has said at the pleading stage in an employment case, it's a minimal burden to show discriminatory intent, there's still a burden there. You still have to show similarly situated in all material respects if you are comparing two classes of employees. If you're using statistics, they have to reach a fairly high level even at the motion to dismiss stage as this court set in Burgess. And opposing counsel essentially conceded at the start of his argument that to rule in his favor you would have to overturn Burgess because he said that this case is a challenge to Burgess. The allegations here are weaker than in Burgess, as I just said. And opposing counsel did not want to focus on the anecdotal allegations of mistreatment. I just would touch on those briefly, as your Honor noted. There are no allegations in the complaint connecting those, what he calls anecdotal allegations of mistreatment, to any decision makers regarding pay, the named plaintiffs or the named defendants or their predecessors or any other official in the state court system that makes any sense. What about his argument that court reporters and other court staff have spaces to sit in the courtroom and offices and the like and interpreters don't? Doesn't that speak to some discriminatory intent in the decision maker's character? I don't think so because there's even nothing connecting that to any decision makers and there's no specificity about those allegations. He doesn't allege that there is a policy prohibiting in all courts in the state of New York, requiring court interpreters to sit one place versus court reporters. All we know from that allegation is in potentially one courtroom in the state of New York, this is where court interpreters are required to sit. Yeah, we don't know if the people who make the salary decisions are the same people who make the space decisions, I guess. Absolutely, and salary decisions are statewide. Court interpreters in all, the location pay may be, depending on the location, but all court interpreters in the state are paid on the same scale. I do not know that the policies for a courtroom or a courthouse in one city in New York, I assume are made by personnel for that courthouse. They're not made statewide. Not every courtroom would be subject to the same sort of policies. Is one of these jobs more demanding than the other? Obviously, he alleges that, Your Honor. The complaint alleges that court interpreting is more onerous than court reporting. I'm not sure if that's a factual allegation this court would be required to accept as true at the motion to dismiss, but even if it were, as Judge Villardo pointed out, pay decisions are not made by what job is more onerous than another job. Just the mere fact that one job may be more onerous does not mean that, or more demanding does not mean that it should be paid more, or that the failure to give more pay gives rise to any inference of discriminatory intent. This court has never said that. I'm not aware of any court that has said that. And as he concedes, the jobs are different. If there are no further questions, we ask this court to affirm. Thank you, counsel. We'll hear rebuttal. Your Honor, first of all, we aren't asking you to overturn Burgess. There's been a Second Circuit decision that interprets Burgess, which we think is the applicable case here, and that's the Richardson v. City of New York case. And that's a district court decision, but even in Burgess it doesn't say, if you have statistics, forget it, you're out of court. Because Burgess is critical of the type of statistics and what it showed, because of the lack of even allegations that said the numbers who applied and the percentages who were denied the promotions. But the statistics in Burgess were not enough, right? The statistics were simply 50 percent of the first level was black and Hispanic, 20 percent of the next level up, 10 percent, and that was the statistic. But that was not good enough, right? The court said it wasn't good enough. So are there any cases, I asked this question earlier, are there any cases where statistics have been found to be good enough? I know Burgess said statistics can be good enough, but are there any cases where statistics have been good enough? And how do those cases, if there are any, how do they compare to what we have? There certainly have been many disparate impact cases that have gone through this court system here in New York City with police and firemen and whatever that didn't get dismissed at the motion to dismiss stage. Based purely on statistics? Yes, they were purely based on statistics, the test, how many passed the test, how the test had a discriminatory impact. It was all statistics. It wasn't like someone said, oh, you're black, you're not going to get to, you can't pass this test, get out of here. It was statistics. And Burgess says that if you can show discrimination based on statistics, but in that particular case, you have to show more than just the math. You have to show some notion, you have to have some notion of what's going on. And I did cite on page 58 of my brief, I mean 59, the Richardson case, where the district court said instead they need only the statistics and the other information in the complaint. And they cited Burgess. Need only show a reasonable expectation that discovery will reveal evidence of illegality, which is what the court just suggested. In a market that was entirely a free market, which of these occupations would demand higher compensation? Well, in, well, it's not a free market because the compensation Where is the hypothetical? I would, because the rest of the United States and this court pay more for interpreting, I would say interpreters. They have to translate two ways back and forth, complex legal terms, you know, connotations in what people are saying. And I just want to say one other thing, because we also assert, besides, we also assert discrimination based on association with people with disabilities for the deaf court reporters. That is one of the complaints. So we didn't, to say, oh, some of them are interpreters who interpret for people who are deaf, so therefore they're not all people who are, we did assert that as a separate class of people. So to say that we didn't or to say that we were seeking to overturn Burgess instead of distinguishing Burgess is incorrect. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.